Good morning. I'm Michael Levine. Nice to see you again. Appearing on behalf of Alicia Stacey, Your Honor, I'm going to argue for ten minutes and Mr. Cohen, representing Ronald Stacey, is going to argue for ten minutes. And with your indulgence, I've asked Mr. Cohen to actually come up and tap me on the shoulder because sometimes I lose track of the time when my ten minutes have run. For our convenience, how have you allocated the issues? I'm going to address the following issues, Your Honor. I'm going to address the refusal of the district judge to give the jury instruction on the statute of limitations and then what I call the sandbagging of the defense by the giving of the statute of limitations instruction. That's number one. I'm going to argue two others. I'm going to argue the district court's error in not severing Alicia's case from that of the co-defendants after the judge granted her Rule 29 motion and dismissed her from the conspiracy count. And the third issue I'm going to argue is the court's refusal to instruct the jury that no special weight should be given to the certificates of assessment if the jury determined that they were inaccurate or arbitrary. Those are the three issues I plan to raise. And Mr. Cohen, what issues are you going to address? I plan to address, for the most of my time, the evidence issues, evidence of the issues that were raised regarding the test certificate for Mr. Stacey and the rent measure that was excluded from the evidence. I'm also going to touch upon the motion for judgment of McQuill and the certificates of assessment. And if I have time, a bit on the statute of limitations and the freedom to identify issue. Okay. Madam Clerk, could you restart the clock for ten minutes? Thank you, Your Honors. Your Honors, this was a case of sandbagging. The defense attorney for Alicia Stacey, Mr. Ken Lerner, did not argue what was what he should have been able to argue, that the statute of limitations would have should have prohibited the jury from considering 11 out of the 14 as a alleged acts of evasion. And he should have been able to argue that the three that were left within the statute were innocuous acts and not acts of evasion at all. And of course, it would have been up to the jury to decide that. But he never argued that. It's a good argument, I think. But how do you get around the government's argument that the law of the case precludes this issue? Well, as I point out in my brief, Your Honor, the law of the case only precludes the issue if it was the same identical issue that was argued. It's the same case. I'm sorry? The case is safe. It's the same case. I don't read the law that way, Your Honor. The law that I cited to the court says it's the same issue. It couldn't be the same case. It has to be the same issue that's presented to the Ninth Circuit and that's decided by the panel. Yes, if the panel decides the issue that's raised by co-defendants, then a late-coming co-defendant such as myself, I guess, is bound by the law of the case. Well, isn't it the same issue, the failure to give the instruction until the next day, therefore precluding arguments on the issue? No, it wasn't the same issue because Alicia, Your Honor, was the only defendant among the seven who was found not guilty by the trial judge of conspiracy. So she went into closing argument being the only defendant not guilty of conspiracy, facing only the charge of tax evasion in count eight. The issues that was decided by the Ninth Circuit with the other defendants, if you read the opinion that's attached to the government's brief, talks about the overt acts in connection with the conspiracy charge. They don't talk about, as I read the opinion, the overt acts in connection with the tax evasion charge, only the conspiracy charge. So the doctrine of law of the case simply doesn't apply because the Ninth Circuit was not focused on the particular argument that I am making to you now. So it just wasn't raised. It wasn't addressed. And the argument is, as the court pointed out, thank you, it's a good argument. It's a winning argument under United States v. Gaskins. Defense counsel was sandbagged. He was the defense was affected. He never got to argue. And just as in the United States v. Gaskins, this court found reversible error. The court should find reversible error here on the same grounds. Second, Your Honor, I'd like to move to the conspiracy issue. Again, Judge King granted the Rule 29 motion and acquitted Alicia conspiracy. Alicia of conspiracy after the close of the government's case, there were motions. All motions were made and renewed, including a motion to sever Alicia from the case. It was denied. That was that was error at that point because of the enormous quantity of evidence that prejudicial evidence that had been admitted against the co-conspirators that never would have been admitted. Never the vast bulk of it. Some of it would have no doubt. But the vast bulk of that evidence would have been inadmissible against Alicia had she be tried. Had she been tried alone just by way of example. And it's a mountain of evidence. But just by way of example, the conspiracy between Leon Crockett and Mr. Flowers, one of the co-defendants to build the IRS of millions, that never would have been admissible against Alicia had she been tried alone. The Dorothy Mitchell conspiracy with co-defendant Kirkham to have built the IRS of millions, that would have never been admissible against Alicia at a separate trial. Kirkham's racist views never would have been admitted against Alicia at trial. Kirkham's hypocrisy where he's claiming the government shouldn't tax him at the same time he's taking welfare for his family and his kids. The blatant hypocrisy of all these co-defendants. The fanatic so-called Christian patriotism and all the nonsense that they spouted. None of that would have been admissible or the vast bulk of it would have been inadmissible. His anti-Semitic, rampant anti-Semitic views talking about the Sanhedrin and the Talmud and the gross anti-Semitism and racism of these co-defendants. None of that would have been admitted against Alicia had she been tried alone at a separate trial. This was not a fair trial. She was butchered by the birds that she was flocked together with. Counsel, isn't our inquiry whether or not the jury was able to compartmentalize the evidence? Yes. One of the things you have to look at are the jury instructions. And the Supreme Court said in Kodiakos that in this kind of case, I have the quote. A quote from Kodiakos is the court's instructions had to quote scrupulously safeguard Alicia as far as possible. They didn't use Alicia. I'm sticking in Alicia. Scrupulously safeguard Alicia as far as possible from loss of identity in the mass. So we look at the jury instructions and the government comes back and says, well, look at the jury instructions. They were fine. They were perfect. They were the standard boilerplate instructions that are given. Not one of them ever said to the jury, ladies and gentlemen of the jury, I'm telling you, Alicia has been acquitted of conspiracy. She is not on trial any longer for conspiracy. I looked for those cautionary instructions in the record and I couldn't find them. Are they included in the record? No, no. I don't know whether they're sufficient or not. Oh, I'm sorry. I'm sorry. You're talking about which were to tell it, tell the jury to compartmentalize the case. Apparently we're given on several occasions. I could not find those instructions in the excerpt from the record. Sure. No, they're not in the they're not in the excerpt of record. I'm hard for us to make a judgment about those instructions. Well, but they are quoted. They are in the transcripts, of course. Unfortunately, there's 30 volumes of transcripts, but they are the citations for all the instructions that I cite are cited in the transcripts. And also the government has also cited various instructions that it asserts were good. But I can tell the court this, that the court will look in vain for an instruction that mentions by name Alicia Stacy anywhere. The court will look at the court did say, you know, you have to consider the evidence as to each defendant separately. And the defendants are only on trial for the charges that they're charged with and for nothing else. Oh, yes. Instructions were. Yes. Those were given that one of the defendants was acquitted, which is fairly strong evidence that the jury looked at each defendant individual. Well, acquitted of some counts, but as of one of one or more defense was submitted of one or more counts. But as I cited, the one defendant acquitted of the conspiracy counts, in addition to Miss Stacy wasn't. No, no one was. No. To my knowledge, no one was. No one was acquitted of conspiracy. They were all convicted of conspiracy. A couple of defendants were, I think, acquitted of a failure to file count. But I may be I may have that wrong, but I believe all work. All were convicted of conspiracy except Alicia Stacy, who was acquitted by the judge. Defendant weekly acquitted. I'm sorry, Your Honor. I can't remember. He was he may have been acquitted of. I just can't remember what he was acquitted of at the moment. What the judge proper cautionary instructions in a case like this, where you have a relatively peripheral defendant in a sea of felons and racists and anti-Semites and quack theorists and. Proper instruction would have been, ladies and gentlemen, the jury, Alicia Stacy has been acquitted of the charge of conspiracy. You should care if you must carefully consider the evidence in this case as only it relates to Alicia Stacy. And when other instruction requested specifically, no, no, there was no. Well, there were a series of not that specific instruction the way I put it was ever requested. But the burden is on the court, according to Kodiakos, to scrupulously safeguard Alicia Stacy. The one way you do that is listen to what the lawyers say needs to be done in order to do that. There were there were various requests throughout the trial, Your Honor, for cautionary instructions by all co-defendants. The one I presented is perhaps in the most dramatic form. And granted that specific question, that specific request was never asked. But at the very least, there should have been cautionary instructions identifying Alicia Stacy by name. There were repeated requests by Mr. by Mr. Lerner for cautionary instructions for severance. Motions for severance were renewed constantly. So given given the acquittal after the after the government's case, if there wasn't going to be a severance, the court, it seems to me, had to bend over backwards as Kodiakos requires with cautionary instructions. The last issue I'd like to address is the refusal of the court to instruct the jury on the weight, that no special weight should be given to the certificates of assessment. This was the heart of the government's case. The certificates of assessment were the prima facie evidence that taxes were due. And yet. Presumptively valid? Well, the prima facie valid, presumptively valid, yes. They appear to be presumptively valid until it's shown that they're inaccurate. And in Cohen versus the commissioner, the case we cite, a civil case, expressly holds that once you show that the certificates of assessment are inaccurate or arbitrary or there's something wrong with them, to quote the colorful phrase from Cohen, they're out of the case. Counsel, doesn't that case involve a showing of inaccuracy in a contested hearing? Yes. It was a contested civil tax hearing. But the same principle should apply even further in a criminal case. It's a contested hearing. Do you owe taxes? Government has to prove it beyond a reasonable doubt. And did you willfully evade taxes? Government has to prove it beyond a reasonable doubt. Okay. They introduced the certificate of assessment, which is prima facie. Well, it says you owe taxes. Now the defendants come in and say, wait a minute. This piece of paper is wrong. What did the defendants offer to show that the certificates were inaccurate? They offered expenses from three businesses that they ran for years. They offered expenses and the normal operating expenses that go with business from Ron Stacy Construction, from the Shu Tu Company, from the Tickle Your Fancy store. Now, granted, it was 14 years after the fact, but they came in with witnesses testifying that there were expenses, that there were leather goods bought, that there was no dispute that the businesses. There were expenses, but they never established. They were unable to establish the amounts. That's true. They were unable to establish the precise amount. That's true. But nevertheless, that did not detract from the principle that that certificate of assessment was inaccurate and wrong because it did not account for any business expenses of three separate businesses. No expenses. So it was clearly inaccurate, and the jury should have been told. The judge had a duty, specifically when they're requested by defense counsel, to tell the jury, ladies and gentlemen, when these certificates of assessment, you have to know that the defendant has contested them, and they're not entitled to any special weight under the law. Instead, they went in as if it was the Holy Grail of evidence. And it's true there were general instructions that the jury is entitled to judge all evidence and the weight, but that's not enough. We asked for a specific instruction to a critical piece of evidence. The court was duty-bound to advise the jury that that piece of evidence was essentially worthless if they found that it was inaccurate. That's all we were asking. And Colin, hadn't the tax court previously determined that the certificates of assessment were erroneous? Hadn't the tax court made that determination? I can't answer that question, Your Honor. I don't know. I don't know. I'd have to refresh myself with the recollection of the case. But the principle of the case remains the same, that the – and once the certificates of assessment are proven to be inaccurate, the judge should have instructed the jury that you can give no special – you should give no special weight to these assessments if they've been shown to be inaccurate. And if there's any further questions? I don't think Colin says that. Your Honor, I don't have it in front of me, and I'll let the court – Fine. Give us some of your time in any of this. Thank you, Your Honor. Thank you. Counsel, when you recited the issues that you were going to address, I didn't hear you say anything about sentencing. Pardon me, Your Honor? I hope you can give us some help on the sentencing issues. Your Honor, did you want me to address that in the sentencing? Well, I don't care who, but it would be helpful to us to have that issue addressed in view of Blakely. Well, I will address that, Your Honor, and I think that – I'll address that right now. I think in view of Blakely and Ameline that the government's appeal on that issue is moot. These issues would have had to have been decided by a jury. They're essentially saying that Judge King made an incorrect decision by not finding that their tax loss was greater, so that they should have been sentenced to more time. But the judge made a finding as to a tax loss of, what, $11,000? Yes. Well, can that stand up in the face of Blakely, if Blakely applies? It was a factual finding that was not made by the jury. So the question I have is whether the case has to be remanded for resentencing under that provision of the guideline that says where the jury makes no finding of the loss, then the offense level is at six, I think. That may be true, Your Honor. If that's the case, then they need to be sentenced to probation at the lowest end where no tax amount was found by the jury, or perhaps there'd be some sort of sentencing jury brought to you. You mean some sort of sentencing jury. Where do you get that? Is there such a thing outside of death penalty cases? No, there isn't. I don't think that there's authority for it. I'm just posing possibilities if that happens. Well, you don't have a position then, I take it, in this case. No, I take it that it's moot. That would be my position, that it's moot because of the Amelian case, at least until further guidance by the Supreme Court in the case that's before them now. Well, how could it be moot if the judge made a factual finding that was of the amount of the loss that should have been made by the jury under Blakely? Well, I don't believe that that was the government's argument down below. They said that the government. No, that was before Blakely. Right. Well, the courts have made lots of discretionary decisions over the years with the guidelines, and not all of those cases are subject to being remanded for the court to, for every time that they've made a decision exercising their discretion under the guidelines. So, if it may please the Court, if I could get on to a few issues, I'll try to return to that, Your Honor. Just in response to some of the Court's questions earlier, Dorothy Flowers and Jeff Wheatley were acquitted of the failure to file counts. Everybody else was convicted of conspiracy except for Alicia Stacy, who was acquitted by the judge on a motion for judgment of acquittal. I would join in Mr. Levine's, all of Mr. Levine's arguments, in particular the statute of limitations arguments and the sandbagging, not giving that instruction until after closing arguments. That still applies to Mr. Stacy with respect to his evasion count, not the conspiracy count. I agree that under the law of the case, the conspiracy count must stand under the panel's prior ruling, but not as to the evasion count. And, in fact, if that statute of limitations instruction had been given, not only would Mr. Stacy have been able to argue that just three overt acts were innocuous acts, the filing of the bankruptcy petition and putting the names of a utility into a mother-in-law, as well as using the bank, the CPA. But I note that the government spent several pages of their closing argument detailing each of those 14 overt acts. And I think that for the court to sometime later, a day or so later, to come in and instruct the jury that they can only consider acts within the statute of limitations just can't take away the prejudicial effect that the government's argument had on that matter. I'd like to address two very critical pieces of evidence. Mr. Stacy was involved in a massive case, was five and a half weeks of testimony, hundreds, almost thousands of documents, probably from all the defendants, thousands of exhibits. But he had a two-pronged defense that he told the jury about from the very beginning and tried to run with it right throughout the case, that he didn't owe any taxes and that he suffered from some sort of psychotic break back in about 1991. The critical pieces of evidence that we needed to get in to help establish this were, number one, the death certificate of his brother-in-law. The government objected every time we tried to bring in evidence of his brother-in-law's death. There was evidence in the record from his daughter showing that they had a very close relationship. And the death certificate would have shown that this person, his brother-in-law, died a day after Mr. Stacy turned 50 at a time when all of his businesses were failing and the IRS was coming after him. Dr. Esther Gwinnell, a licensed psychiatrist, testified that when she looks for psychotic breaks, she looks for stressors, things that would cause a psychotic break in somebody, one of which is the death of a close family member or friend. We tried to establish this to corroborate why this happened, why Mr. Stacy did not appear at his assessment or audit hearing and why he began to write all these letters and complaints to the IRS. He went off the wall. He had suffered a psychotic break. And to establish that, we needed this piece of evidence to show that his brother-in-law had died. The evidence about his brother-in-law's death didn't come in? No, it never came in. Not just the fact that he died, but the death certificate itself, which would have shown the date of his birth, which lined up with the certified Social Security document that the government admitted, showed the date of Mr. Stacy's birthday was December 20, 1941. The brother-in-law died December 21, 1991. Did Stacy testify? No, Mr. Stacy did not testify. The fact that he was experiencing severe stressors came into the record, is that correct? Well, the fact that he was experiencing severe stressors because of the IRS and his businesses were failing, those two points were brought up in evidence, yes. But his brother-in-law's death was a very, very important factor. And under the abuse of discretion standard, which is normally how you look at a judge's evidentiary call, any time a judge makes an error of law, that's an abuse of discretion. And in this particular case here, finding that that document wasn't relevant to Mr. Stacy's case was an error of law. This was one of the cornerstones of his defense. It was of crucial importance for him to establish that and to bring it up in front of the jury. In a case like this, every trial seminar you go about complex cases, the presenters will tell you that you've got to boil these cases down to three, four, or five documents. You've got to really narrow it down and simplify it. And this was one of those documents. And Judge King found it irrelevant and kept it out on relevance grounds. In fact, at the end of the case, when I offered to bring it in once more, the prosecutors, the government asked the judge to preclude me from arguing at all about the death of the brother-in-law. And the judge so instructed me. And so nothing was ever brought up in closing argument about the brother-in-law dying. It really crippled our defense in that area in terms of the psychotic break. The other piece of evidence I want to talk about is this rent ledger. We brought in an apartment manager or a lease manager from Vancouver. She began work in 1990, and the critical years in this case were 1986 through 1989. Those were the years for which the Stacys were alleged to have not paid taxes that they owed. The rent ledger showed the computerized rent ledger did not start until 1992. And it showed the Stacys paying rent on an office space or warehouse space up in Vancouver as part of the Tickle Your Fancy store where they kept inventory and supplies. However, if you coupled that rent ledger with the lease agreement that was entered into evidence, the lease agreement dated in July of 1988, the rent ledger itself says the start date was July of 1988. And this apartment manager, Denise Kunkel, I believe her name is, she testified that they have no policy at their company of ever allowing free rent. It had a tendency to make more believable and more probable the fact that the Stacys were paying not just rental income on that space but also all the incidental expenses that go with having a space, the telephone, the utilities, the insurance, the taxes. This was the heart of our case to show that the Stacys were paying legitimate business expenses to undercut the government's case, to undercut the certificates of assessment that Mr. Levine spoke about. I would further that argument on the certificates of assessment. If you were to think about these documents, what they are, are government documents saying that we found that you owe, for example, $100,000, and even though you have businesses, you haven't come in and shown us any expenses, so we're going to say you owe us $100,000 in taxes. Well, the Stacys did come in 14 years later to show that there were legitimate business expenses, expenses that could have been deducted. So instead of this document that says that they owe, for example, $100,000, that $100,000 figure is meaningless. Well, did they come in to show the amounts or approximate amounts of the expenses? They came in. We came in with everything we had, Your Honor. Well, that's not really an answer. Well, we did show amounts. Yes, well, we showed amounts through, for example, the lease agreement. The lease agreement that is Exhibit 137, I believe, showed that the Stacys were paid a six, this is in 1988 at least, paid six months' rent ahead of time in July of 1988, and that their monthly rent thereafter was $389, but that they would also have to pay taxes and insurance and utilities and a lot of other things. We tried to prove that through an inference, through corroborating it by the rent ledger for later years that showed the starting date back in 1988. That was how we tried to come up with specific amounts. One of the government witnesses on our cross-examination showed that on their store, not the warehouse space, but the store, that the Stacys were, in fact, paying rent on their store, at Tickle Your Fancy Store, I believe back in 1987, as early as 1987. And he spoke about amounts of rent at their store. So as best we could, we were able to come up with amounts. And Oregon Leather, one of their stores was called, or businesses was SHU2, where they made these moccasins, mail-order moccasins that they would send out to people, and they sent the leather kits. They had to buy lots of leather and punches to put into each kit. We had a witness from Oregon Leather Company came in. He remembered Mr. Stacey from years ago, and there were some but not all of the receipts. So we came in with amounts, but there was a lot of evidence showing that there were many attempts made that banks don't keep records for more than seven years. And this is where the pre-indictment delay really hurt us. With respect to the pre-indictment delay issue, I'll just mention one thing. While the trial court has a lot of discretion on a pre-indictment delay issue, here there was no reason for the government at least filing a tax evasion claim against the Stacey's three years earlier than November of 2000 when this indictment came down. At the pre-trial hearing in this matter, the government agent testified their case against the Stacey's was completely investigated with respect to that evasion charge three years earlier. The counsel of the Stacey's knew about the investigation way prior to the indictment. Isn't that correct? So how are you saying there was prejudice that they knew about the investigation? If the court so found that they should have known at least about the investigation, Mrs. Stacey got rid of the documents, and I guess your question assumes or seems to read into it that she shouldn't have gotten rid of those documents. She shouldn't have made a house cleaning if she was on notice that they had a criminal investigation against her. Two reasons that there was still prejudice. First of all, it was reasonable for her to get rid of the documents when they filed the bankruptcy petition and served it on the IRS and didn't hear anything from them. Secondly, even if the Stacey's had kept their documents, there's no guarantee that they would have kept all their documents. It's all of the peripheral suppliers, the primary sources of this evidence, the banks, places such as Oregon Leather, the people who rented the space, the property to them, those people didn't have documents from back then either. So that's how they were prejudiced, because the primary sources of information did not have this information, and we brought that out in evidence. I believe that that's all I have, Your Honor. All right. Thank you, Counsel. May it please the Court, my name is Karen Quinnell, appearing on behalf of the United States. Your Honor, first as to the statute of limitations issue, the statute of limitations instruction as to tax evasion was also at issue in the Anderson case. Two of the defendants in that case, both Anderson and Kirkham, were charged with and convicted of tax evasion, both of them challenged to the statute of limitations instruction. The statute of limitations instruction given by the district court during the jury's deliberations covered both the conspiracy and the attempted evasion charges, and therefore Anderson is law of the case in this situation. The defendants argued that they should have been allowed to make an argument during closing argument about the statute of limitations, but as this Court has already decided in Anderson, the Court's giving of that statute of limitations instruction did essentially the same thing for the defense. Are you going to say something about the sentencing in this case? Yes, Your Honor, I'll go directly to that. The government's sentencing appeal is not moot. Of course, currently pending before the Supreme Court are the cases Booker and Fan Fan, where we expect the Supreme Court will decide whether or not its earlier Blakely decision will apply to the guidelines and invalidate them either in whole or in part. Depending upon what the Supreme Court does in Booker and Fan Fan, there will be implications for this case. If the Supreme Court finds that Blakely applies and invalidates the sentencing guidelines but follows this Court's decision in Ameline and finds them to be severable, the case will need to be remanded to the district court for the jury to make appropriate findings. Now, in Ameline, this Court discussed the three different alternative routes that can be followed in the event the Supreme Court strikes down the sentencing guidelines and finds them to be severable. And those three routes are, one, the defendant can be sentenced pursuant to his admissions. In this case, we don't have admissions. Ameline was a plea situation, so that won't apply here. There are two other alternatives. The defendant can waive his right to a jury and have the district court make the findings, make the factual findings under the guidelines as they will be left to the extent they're left intact by Booker and Fan Fan. And he will have to make those findings beyond a reasonable doubt. The third option discussed in Ameline is that the court can convene a sentencing jury. And this court in Ameline specifically addressed whether or not such a sentencing jury would violate the defendant's rights to double jeopardy and decided that it would not violate his right to double jeopardy. The defendants in this case have no legitimate expectation in the finality of their convictions because both the defendants here and all the defendants in Anderson brought their cases up on direct appeal. So there are all kinds of different things that could happen depending on what the Supreme Court says and whether they give us guidance and what guidance they do give us. Do we need to do anything on the sentencing appeal but wait for Booker and Fan Fan? Your Honors, the government has asked this panel to hold the decision on the sentencing issues pending the guidance in Booker and Fan Fan. But if you would like me to address the merits of the issues, I'd be happy to. I was just curious because if the case were to go back for potential jury resentencing, would we need to address the issue that the government raised in order to give some guidance to the district court on what it could tell the jury? Perhaps. I think what would probably happen is that the district court would instruct the jury, I instruct you, you need to find what the amount of the loss was that the defendants attempted to achieve and would have achieved had their offense been successfully completed. So. Pretty general question. Yeah. I mean, unfortunately, we do not quite understand all of the parameters of how these things are going to work out. You're not alone. Is the jury going to be given specific instructions? You can consider this item. You can consider this item. Or are they to be just told the bottom line, figure out the tax loss. You've got all the evidence. You've got the numbers. You figure it out. So I'm at a bit of a loss to say whether or not the court should consider those. I think that if the court wishes to, the court can look at those decisions made by the district court. And of course, as to the two issues that we've raised, we think that the court's decisions were erroneous. Of course, the jury will be given an opportunity in the event of a remand to decide whether or not the defendant's actions, for example, in striking the prosecutor, striking a government witness, intimidating the prosecution team, whether those things constituted obstruction. And they will also be allowed to determine whether or not Ronald and Alicia Stacey, in addition to understating their income, overstated their expenses and overstated their deductions. Or if, indeed, they understated their income even more than we were able to calculate, given the limited amount of records we were able to obtain. So, in effect, that would be a retrial? Unfortunately, in this case, I think it would be quite an extensive sentencing hearing. Does the court like me to address any other merits of the sentencing issues? Your Honor, Judge Wallinson, is there something you wanted me to address? I wanted to ask you to respond specifically to opposing counsel's argument regarding the exclusion of the death certificate. Certainly, Your Honor. The defendant called his daughter, Gail Todd, to the stand to testify. And as a bit of a preliminary introduction, Your Honor is correct. The jury was aware of all kinds of stressors in the defendant's life. They were aware that the government audit began in approximately 1991. They were also aware that there was a serious illness in the family because when the government first sought to meet with the Stacey's in order to carry out their audit, the Stacey's wrote back and said, we can't come and meet with you on the date you've set. We have a serious family illness issue. And please reset the meeting. And then the Stacey's never showed up. They also were aware of the timing of the audit and its relation to that illness. So, when Ms. Todd took the stand to testify, defense counsel asked her if she knew anyone by the name of Lawrence Hedrick, and that was her uncle. That's her father's brother-in-law. And she was asked, did your father have a close relationship with your uncle? Yes, yes, he did. Is your uncle still living? No, he's deceased. At that point, the government objected, and the court sustained the objection. He didn't instruct the jury to disregard the statement that had been made that the uncle was deceased. So, frankly, I'm unsure. I believe that in that situation, the jury did have before it the fact that he was deceased. They did not have before it, however, the death certificate, because the district court determined that that was not relevant to the case and that there were possibilities that that could tend to appeal to the sympathy of the jury. Now, what the jury did know is that the defendant's participation with CPA predated his brother-in-law's death by several years. Furthermore, the defendant had been engaging in his letter-writing campaign and his attempts to revoke his Social Security number and other sort of activity like that prior to the death of his brother-in-law, and that is why the district court decided to exclude that, and there was no abuse of discretion. There was plenty of evidence in front of the jury about the stress that the defendant was under. And furthermore, the district court allowed into evidence testimony by the defendant's expert witness that pretty much undermined her diagnosis of him. The expert explained that the defendant really was only interested in allowing her to examine him because he wanted the government to spend more money on his prosecution, and the jury was certainly entitled to infer that perhaps her diagnosis may not have been based on the actual facts of the situation, given especially that she spoke to the defendant for one hour. Your Honors, I do have the jury instructions that were given to the jury, the jury charge. I understand that they weren't included in the excerpt of record. I'd be happy to give them to you now if you like, and I can also tell you about some of the limiting instructions that were given during trial. Now, although the defendant is right that none of these instructions specifically named Alicia Stacey when the court gave limiting instructions, the district court, on several occasions, when defendants asked, gave limiting instructions. For example, when certain witnesses testified against Dan Kirkham, the court instructed the jury, as I have instructed you at various times during this trial, although seven defendants are on trial together, many items of evidence and testimony relate only to particular defendants and should not be considered as to the other defendants. And so, again, I instruct you that with regard to that testimony, you are to consider that only as to the liability of Dr. Kirkham. He's referring to specific testimony in this instance. This is an important instruction, he told the jury, and I ask you to remember it with respect to these two witnesses and to other witnesses during the course of the trial. And all of the evidence that the defendant, Alicia Stacey, points to in her brief where she's complaining about this severance, she doesn't say that any of those witnesses testified that she was involved in their misconduct. And, indeed, none of those witnesses testified about Alicia at all. In fact, I believe none of those witnesses even knew Alicia. And the jury was quite able to compartmentalize the evidence and see that evidence that was irrelevant to and did not refer in any way to Alicia could not have affected their verdict and was not for them to consider when determining whether or not she was guilty. Also, the jury was instructed that the only charge remaining against Alicia was the evasion charge. They knew she was not on trial any longer for the conspiracy charge, and the only thing they could consider was the evasion. As to the Certificates of Assessments and Payments, the district court gave proper instructions to the jury, and they were able to decide whether or not the Certificates of Assessments and Payments were valid or whether they provided some evidence of the tax liability. In addition to the Certificates of Assessments and Payments, however, the government also put in additional evidence. For example, there was evidence that the Stacey's operated numerous businesses over the years. There was evidence that the Stacey's deposited receipts from those businesses into CPA in order to hide the fact that they were operating businesses and that they had income. In other words, there was overwhelming evidence that there was income that the Stacey's had received and that they had failed to pay any income tax whatsoever for a decade-long period on the income from their business. Counsel, do you recall the specific instruction that was given regarding the Certificate of Assessments? One moment, Your Honor. To the best of my knowledge, there was no specific instruction given on the Certificate of Assessments and Payments. The jury was instructed in general how they were to consider any evidence, and they were instructed that it is for them to decide what weight is to be given any particular piece of evidence. The instruction that the defendants suggested was incomplete and did not instruct that the burden lay on the defendants, the taxpayers, to show that the Certificates of Assessments and Payments were legally incorrect or erroneous. And, in fact, in this case, because of the lack of cooperation of the Stacey's during the entire audit and the course of this case, as we demonstrated in our brief, the Certificates of Assessments and Payments were not legally incorrect. They were, in fact, correct. Deductions are a matter of legislative grace, and taxpayers bear the burden, excuse me, of establishing their entitlement to deductions. What's your response to opposing counsel's reliance on the Conn case? Your Honor, Defense Counsel relied on Cohen and several other cases, saying that once evidence was brought in to rebut Certificates of Assessments and Payments, then the Certificates of Assessments and Payments were, quote, out of the case. That's not the case. In fact, if you look at Silkman, you'll see that what happens is once the government puts in the Certificates of Assessments and Payments, they're prima facie correct. The defendant can come forward with evidence trying to rebut them, show they were incorrect. At that point, the defendant has received what he's entitled to, a fair trial, opportunity to present evidence. Then the existence of the tax liability is a question for the jury to decide, which they were told in this case they had to decide whether or not the defendants owed additional income taxes and whether the defendants knew that they did. What about the language in Conn that says once the Certificates are shown to be incorrect, they're out of the picture? Well, that certainly is. Unfortunately, I seem to have brought the wrong Cohen with me. I brought Cohen versus United States instead of Cohen versus Commissioner. And I tried to look at that last night, and I was unable to. But the other cases, talking about Certificates of Assessments and Payments, for example, Voorhees, which is a case out of this court, and Silkman, which is a case out of the Seventh Circuit, discuss how they're handled. And, in fact, as I said, they're not, once they're determined to be questionable in some way, they are not simply out of the case. They are simply additional evidence that the jury can consider when coming to its decision whether or not there's a tax liability. Furthermore, the presumption of correctness, if you look at Stonehill, the presumption of correctness applies on an item-by-item basis. In other words, if you prove that some part of the Certificate of Assessments and Payments is invalid, that does not mean that the entire Certificates of Assessments and Payments falls. And in this case, given the decade-long conduct, period of conduct, and the amount of the income, even if some part of that Certificate of Assessments and Payments may not have been accurate, it's clear that there was sufficient evidence for the jury to decide that there was a tax liability. Could you address the pre-indictment delay? Yes, Your Honor. The District Court properly denied the motions to dismiss for pre-indictment delay because none of the defendants, Alicia or Ronald, Stacy, suffered any actual prejudice from the delay. What they suffered prejudice from, if their testimony is to be believed, is from their destruction of important evidence in 2000. Now, the District Court determined that this destruction, if it actually happened, was unreasonable given the circumstances. And we believe that the jury could find that those records never existed. The government asked for those records as early as 1991, and the defendants refused to provide them. And to the extent that they had such records, it would have been reasonable for them to either provide them to the United States, to the extent they existed, or keep them, especially in light of the fact that they knew, they were told by Special Agent Walker that they were the subject of a criminal investigation. Well, what about opposing counsel's counter-argument that once the bankruptcy was filed and those liabilities were listed and discharged, the Stacys had a reasonable belief that they were no longer subject to those taxes? Well, the bankruptcy petition that they filed, in fact, instructed them that as to most taxes, they are not dischargeable. Furthermore, none of the Forms 1040 filed by the Stacys for the years that issue in the bankruptcy petition constituted tax returns because they whited out the jurat on all of those documents. So they were not signed under penalties of perjury and they were not tax returns. So the Stacys could not have had a discharge. Furthermore, there's absolutely no evidence whatsoever that they had any belief that they received a discharge because neither of them testified and the one witness that did testify didn't know that they hadn't filed returns and that the documents that they did file didn't contain jurats and that they had whited them out. Unless the Court has any further questions, we'd ask that the convictions be affirmed and the cases be remanded for resentencing whenever the Supreme Court decides to issue its opinion. Thank you, Counsel. Thank you, Your Honor. You all have used all of your time. I will give you one minute for rebuttal. Thank you, Your Honor. Your Honor, on the law of the case, I read the paragraph in the decision, and I'm quoting, nor were the defendants' closing arguments prejudiced by the additional accurate instruction on the statute of limitations. Numerous overt acts were described at trial, any one of which committed by any one of the co-conspirators within the statute of limitations would have sufficed to convict all defendants of conspiracy. With regard to the statute of limitations, defendants might have emphasized to the jury a closing argument that it was limited to considering overt acts committed during the statutory period, but the district court supplemental instruction had the same effect. While co-defendants may have raised the issue in connection with the tax evasion charge, this Court did not reach that issue. This Court is deciding only the issue in connection with the conspiracy charge. So the law of the case doctrine is simply inapplicable because it did not decide the issue that I, on behalf of Alicia Stacey, am raising, namely the tax evasion charge. Second, with respect to sentencing of Alicia Stacey, Your Honors, you don't have to wait for anything. I would urge that if my arguments have not persuaded you to reverse her conviction and if you sustain her conviction, nevertheless you should affirm her sentence of probation. That's the sentence she received from the district judge. The district judge acted properly within his discretion in ignoring the late filing of the government with respect to its tax calculation, which it filed four days before sentencing when it had 30 days to do so. The judge correctly ignored it and found the $11,000 loss. Based on that loss, he gave two levels off for minimal role and gave an appropriate sentence of probation. So there's no reason to wait. Well, if the judge was not authorized to make the finding, then that was erroneous, regardless of whether or not you agree that it was correct. If the judge is not entitled to make that finding, how can we say that it's correct? Well, it can be affirmed that his decision to grant probation can be affirmed on any basis justified by the record. His decision to grant probation, forgetting about loss or forgetting about calculations, was his decision to grant probation. He wouldn't forget about the loss if that's how the sentence is calculated. Well, it's true that if he had no jurisdiction to make a loss finding at all, then that's true. But the question would be, can you read from the record that a sentence of probation nevertheless would be justified? And I submit that given the testimony at the sentencing hearing where Alicia Stacy was testifying that she was basically an obedient wife who was coerced, and the judge found, coerced by a domineering husband, that he would have given probation. I believe the court can read that from the record and should sustain the sentence of probation. Could the sentence not be upheld on that part of the guideline which refers to where the jury makes no loss finding? Yes. So the probation sentence would stand without reference to any loss finding? Yes. It would stand also without reference to the downward adjustment that he made? Yes. So it would stand by simply, simple, straightforward application of the offense level for the minimum offense level for that offense without regard to loss or any other? Absolutely correct, Your Honor. So it doesn't implicate blame? That's true. Thank you. All right, thank you. One minute. Thank you, Your Honor. I'll make three very brief points. First, with respect to the admission or exclusion of the death certificate in this case, the government's counsel suggested that the trial court went through a prejudicial versus probative analysis, and that's not the case. It was always irrelevant, irrelevant, irrelevant. That was the basis of that ruling. Secondly, to suggest that there weren't records, you know, back in the 1980s for these businesses is just flat out wrong. There was a witness in from the SAFE Corporation, the State Accident Insurance Fund, that testified at the trial, saying that she did an audit on Mr. Stacey's construction business for the year 1986 and that there were records back then. So they had plenty of records. Third, with respect to the suggestion that there was other evidence in addition to the certificates of assessment to show that the Stacey's actually owed taxes, that's not the case. They relied upon, from the very beginning throughout the trial, these certificates of assessment. There was no net worth analysis. There was no bank deposits, less expenditures analysis. It was always relying upon the certificates of assessment. So if you were to find that those should have been out of the case, I would ask that the motion for judgment of acquittal, at least with respect to the evasion count, should have been granted, and I'd ask that it be overturned at this point as well. All right. Thank you, counsel. Thank you to both counsels. Thank you, counsel. The case just argued is submitted for decision by the court. That concludes the calendar for today. We are recessed. All rise. This court for this session stands adjourned.
judges: T.G. Nelson, Rawlinson, Pollak